# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| W.R. GRACE & CO., et al., | ) | Case No. 1:16-799 (LPS) |
|  | ) | (Jointly Administered) |
| Reorganized Debtors. | ) |  |

---

## ANDERSON MEMORIAL HOSPITAL'S OPPOSITION TO
## GRACE'S MOTION TO DISMISS APPEAL

---

Daniel A. Speights (SC Fed. ID No. 4252)
A. Gibson Solomons (SC Fed. ID No. 7769)
SPEIGHTS & RUNYAN
100 Oak Street East; Post Office Box 685
Hampton, SC 29924
Telephone 803-943-4444
Fax 803-943-4599
Email: dspeights@speightsrunyan.com

David L. Rosendorf (FL Bar No. 996823)
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
Telephone 305-372-1800
Fax 305-372-3508
Email: dlr@kttlaw.com

Theodore J. Tacconelli (No. 2678)
FERRY JOSEPH, P.A.
824 Market Street, Suite 1000
Wilmington, DE 19899
Telephone 302-575-1555
Fax 302-575-1714
Email: ttacconelli@ferryjoseph.com

*Counsel for Appellant, Anderson Memorial Hospital*

January 4, 2017

Anderson Memorial Hospital ("**AMH**") hereby responds to Grace's Motion to Dismiss ("**Motion**") AMH's appeal of the order of the Bankruptcy Court (Judge Kevin J. Carey) ("**Order**") denying AMH's Motion to Alter or Amend ("**Motion to Alter or Amend**") the prior order of the Bankruptcy Court (Judge Judith K. Fitzgerald) ("**Certification Order**"), denying,"with prejudice" AMH's request for class certification. For the reasons below, Grace's Motion should be denied.

## I. INTRODUCTION

AMH seeks certification of an asbestos property damage ("**PD**") class action. The pending issue is whether this Court has jurisdiction of this appeal. Therefore, AMH will not set forth at this time a lengthy statement of facts or the important reasons why this Court and PD claimants would be best served by class certification.

## II. SUMMARY OF ARGUMENT

Judge Carey's Order interprets the Plan, not Rule 23, and the erroneous conclusions it reaches render it a final order subject to appeal. Judge Carey concluded that the Plan bars AMH "from including post-bar date claims in its class action" [Order at 11-12, citing an unexecuted redline version of the "Property Damage Case Management Order for Class 7A Claims" Bk. 31657-24 ("**PDCMO**") (TAB A)].[1] Because there are no unresolved pre-bar date individual claims (other than AMH's individual claim), *if* Judge Carey is correct, AMH, as a matter of law, cannot meet *any* of the Rule 23 prerequisites for the certification of a class. Not now. Not ever.

Judge Carey also concluded, again as a matter of law, that the Plan and "redline" PDCMO eradicates Rule 23(c)(1)C), which provides that an order denying class certification "may be altered or amended before final judgment." Judge Carey's holding not only misinterprets the PDCMO, but

---

[1]AMH unsuccessfully argued below that this unexecuted redline version of the PDCMO is not operative [Bk. 32671]. AMH will address this issue when it briefs the merits.

is at variance with a specific ruling by Judge Fitzgerald whereby she refused Grace's request, after multiple arguments, to classify AMH's Class Claims as inactive.

Lastly, Judge Carey's Order proves that AMH was prescient when, in its prior appeal of the Certification Order, AMH told the Third Circuit that Grace would later try to use the Plan to prevent any appellate review of class certification.  In response, Grace assured the Third Circuit that the proposed PDCMO "simply has nothing to do with this Court's lack of jurisdiction" [3rd Cir. No. 08-4829, Doc. 00315657978 (TAB B at 2)].  If Grace had told the Third Circuit in 2009 what it now tells this Court – that the Plan and the PDCMO precludes amendment of Certification Order, or AMH from representing other PD claimants – the Order could then have been reviewed on appeal..

## III.  THE BANKRUPTCY

Judge Fitzgerald set a property damage bar date ("**PD Bar Date**") requiring building owners to file certain asbestos property damage claims ("**PD Claims**") by March 31, 2003 [Bk. 1960].[2] AMH timely filed a class proof of claim on behalf of a putative class it had filed before the bankruptcy ("**Worldwide POC**"); a class proof of claim on behalf of the South Carolina class the state court conditionally certified shortly before the bankruptcy ("**Statewide POC**") ("**Class Claims**"); and an individual claim to recover the costs of the abatement of Grace's asbestos product from its main hospital building ("**Hospital Claim**") [Bk. 19987 (collectively "**AMH's Claims**")].

In September 2005, Grace objected to AMH's Claims, which created a contested proceeding [Bk. 9315].  Pursuant to Rule 23, AMH timely filed a Motion for Class Certification [Bk. 10014 ("**Motion to Certify**")].

---

[2]Judge Fitzgerald excluded one asbestos product from the PD Bar Date, Zonolite Attic Insulation ("**ZAI**"), which is subject to a different bar date order ("**ZAI Bar Date Order**").

Judge Fitzgerald entered her Certification Order on May 29, 2008. *In re W.R. Grace & Co.*, 389 B.R. 373 (Bankr. D. Del. 2008).  Judge Carey correctly found that Judge Fitzgerald denied certification "based primarily upon the absence of numerosity, which Judge Fitzgerald found to be dispositive" [Order at 11].  According to Judge Fitzgerald, "In this case, the property damage claim creditor universe is known" because any class must be limited to those who already had filed individual Claims.  389 B.R. at 376.[3]

AMH filed a Notice of Appeal and sought leave to appeal the Certification Order.  Grace opposed the appeal.  This Court (Judge Ronald L. Buckwalter) dismissed the appeal as interlocutory and denied AMH's subsequent Motion to Reconsider [D.Del.No. 08-118, DI 11].

On September 19, 2008 Grace filed its proposed Plan and Plan Exhibits, including Exhibit 21, which classified AMH's Class Claims as active [Bk. 19580-21 (TAB C)].  Several days later, Grace sought an Order appointing Alexander M. Sanders, Jr. as Legal Representative for Future Asbestos-Related Property Damage Claimants.  Citing 11 U.S.C.§524(g)(4)(B)(1) *et al.*, Judge Fitzgerald granted Grace's request [Bk. 19818] and appointed an "Asbestos PD Future Claimants' Representative" ("**PDFCR**") [Bk. 24657-2 at 20 §23, 24].

Judge Fitzgerald's appointment of the PDFCR permitted Grace to seek a 524(g) injunction, which would provide Grace protection from future asbestos property damage liabilities.  In addition, the 524(g) injunction was a condition precedent for Grace to receive more than a billion dollars from

---

[3]The Court rejected numerous cases holding that if the class claim is certified, the claims of all members of the class are incorporated in the timely filed class proof of claim.  See, e.g., *In re: American Reserve Corp.*, 840 F.2d 487 (7th Cir.1988); *In re Charter Co.*, 876 F.2d 866 (11th Circuit 1989).  Before AMH filed its Claims, the Bankruptcy Court had adopted these cases and held that, "If the class claim is certified, then the claims of all of the members of the class are incorporated in the proof of claim that was timely filed.  This is inherent in class actions." *In re Kaiser Group International, Inc.*, 278 B.R. 58, 63 (Bankr. D. Del. 2002) (Judge Walrath).

a settlement with Grace's former affiliates [Bk. 24657-2 at 20 §26].

Although Judge Fitzgerald had just denied class certification because "the property damage claim creditor universe is known," the statute Judge Fitzgerald cited in support of the PDFCR's appointment specifically provides that "as part of the proceedings leading to the issuance of such injunction," the Court must appoint a "a legal representative *for the purpose of protecting the rights of persons that might subsequently assert demands" as set forth therein*. 11 U.S.C.§524(g)(4)(B)(1) (emphasis added).  In contrast to Judge Fitzgerald's findings in denying certification, the statute also requires that to issue a 524(g) injunction, the Court must find that the debtor is "likely to be subject to substantial future demands for payment,"and that "the actual amounts, numbers, and timing of such future demands cannot be determined."  11 U.S.C. ¶524(g) (2)(B)(ii).

At the same hearing (when Judge Fitzgerald appointed the PDFCR), AMH pointed out that its Class Claims were listed as active in Plan Exhibit 21.  AMH and Grace argued the issue of how AMH's Class Claims should be categorized in the Plan at three separate hearings in the fall of 2008 [Bk. 19987 (TAB D)].  Judge Fitzgerald directed the parties to file Status Reports briefing their respective positions (TAB D).  In its November 20, 2008 Status Report, Grace [Bk. 20111  (TAB E)], Grace argued that:  "**The class proofs of claim (Nos. 9911 and 9914) should be categorized as 'inactive' and Exhibit 21 to Grace's Disclosure Statement should be revised accordingly**" [*Id*. (emphasis added)].

On December 12, 2008, AMH appealed Judge Buckwalter's dismissal of its appeal of the Certification Order.  Several days later, Grace filed its first iteration of the PDCMO [Bk. 20304-14] The document provided that, "Class Action Claims shall not be permitted" [*Id*. at ¶II.A.3. at 15].  Although the Court had not ruled on Grace's request that the Class Claims "should be categorized

as inactive," the proposed PDCMO provided that "AMH class claims shall remain inactive unless and until there is a final, appealable order with respect to AMH's individual claim" [*Id.*].

Shortly thereafter, the Third Circuit Clerk directed the parties to address the court's authority to hear the appeal.  AMH informed the Third Circuit that Judge Fitzgerald had taken the question of the status of AMH's Class Claims under advisement [3rd Cir. No. 08-4829, Doc. 00314699932 (TAB F at 24].  AMH also expressed its concern that Grace would take the position that confirmation of its Plan would preclude subsequent appellate review of class certification and the subsequent assertion of the Class Claims, referring to the language in the PDCMO [*Id.* at 33].

Grace filed a Motion to Dismiss the appeal.  In its opposition, AMH told the Third Circuit that, "Grace's intent to make the ruling of the Bankruptcy Court 'unreviewable' has now been made very clear" by its proposed PDCMO" [3rd Cir. No. 08-4829, Doc. 00315534273 (TAB G at 1-3)]. Grace in turn filed a response it which assured the Third Circuit that the PDCMO was not a final order, that the proposal had nothing to do with the jurisdiction over the appeal and that it

> likely will be amended several times before it is entered by the bankruptcy court. In any event, this proposed order simply has nothing to do with this Court's lack of jurisdiction over this appeal.

[(TAB B at 2)].  If the PDCMO had any dispositive effect on AMH's ability to pursue class certification, then Grace could not have accurately made that statement to the Third Circuit.

In the next month, Grace filed further amendments to the proposed PDCMO [Bk. 20874-24, ¶II.A.5 at 5; Bk. 20877, ¶II.A.5], and continued to tweak the language, ultimately providing:

> Class actions claims shall not be permitted. For the avoidance of doubt, the foregoing prohibition against the filing of class actions claims shall not (i) be asserted by Grace as a basis for dismissal of any appeals by Anderson Memorial Hospital of the denial of class certification, (ii) be construed to require the dismissal of, or require any particular ruling with respect to class certification in, any subsequent proceedings on remand, if any, from any such

pending appeals, and (iii) be construed in a manner which conflicts with any mandates issued by the Third Circuit Court of Appeals in any such pending appeals.

[Bk. 23177-2, ¶II.A.4. at 25; see also Bk. 25881-14, ¶II.A.4. at 6]. Clearly these amendments were made to address AMH's argument that the potential entry of the confirmation order and proposed PDCMO entitled AMH to appeal certification immediately, and to assuage the Third Circuit that AMH's certification effort would not be prejudiced if the appeal was dismissed as premature.

In February 2009, Grace filed its Joint Amended Plan and Plan Documents [Bk. 20874-2]. Grace proposed that all PD Claims would be paid by a 524(g) Trust [*See* Bk. 20873 at §4.7.3.1]. Even though Judge Fitzgerald had not ruled on how AMH's Class Claims should be classified in the Plan, Grace, without permission, provided that the Class Claims "shall remain inactive unless and until there is a final, appealable order with respect to the Anderson Memorial individual claim."

On April 13, 2009, Judge Fitzgerald ruled on the classification of AMH's Class Claims [Bk. 21257 ("**Reduced to Zero Order**") (TAB H)]. The Court rejected Grace's request that the Class Claims would be categorized as being "in suspense" or "inactive" [*Id*. at 2]. Instead, the Court held that the Class Claims "are reduced to zero" [*Id*. at 2-3].

On December 14, 2009, the Third Circuit ruled that Judge Fitzgerald's denial of class certification under Rule 23 was not a final appealable decision [3rd Cir. No. 08-4829, Doc. 00319944293]. The Third Circuit also ruled that it lacked jurisdiction to review Judge Buckwalter's denial of a discretionary appeal. *Id.*

On December 8, 2010 – a year after the Confirmation Hearing concluded and twenty months after Judge Fitzgerald denied Grace's request to classify AMH's Class Claims as inactive – Grace filed a Notice of Fifth Set of Modifications to the Plan [Bk. 25881]. Included in this Notice (not a Motion), consisting of almost 400 pages, was one line in Exhibit E that read: "III. Inactive Anderson

Memorial Class Claims" [DI-25881-5 at 16].

The Confirmation Order was entered on January 31, 2011 and thereafter affirmed by Judge Buckwalter and the Court of Appeals. *In re W.R. Grace & Co.*, 446 B.R. 96 (Bankr. D. Del. 2011), *aff'd*, 729 F.3d 332 (3d Cir. 2013). The Plan provided for a 524(g) PD Trust based on Grace's proof that it would face substantial post- confirmation PD Claims. 729 F.3rd 342.[4]

The Plan was implemented on the Effective Date of February 13, 2014 [Bk. 31732]. Under the Plan, all PD Claims are divided into two categories: Unresolved Asbestos PD Bar Date Claims ("**Bar Date Claims**"); and all other Asbestos PD Claims ("**Other Claims**"). The PDCMO provides separate tracks for the post-confirmation adjudication of these two categories of PD Claims. The Bankruptcy Court will adjudicate Grace's objections to Bar Date Claims (i.e. AMH's Claims), on two grounds: lack of hazard and damages [PDCMO ¶I.A. at 2, Ex. ¶A. at 9-10]. The hazard issue will be determined in one bench trial. If the Court certifies AMH's Class, the results of that trial will be binding on AMH, individually and as the representative of all members of the class. The Court will then determine class damages, which is not only something that is done every day in class actions, but is particularly straightforward in a non-jury asbestos PD case. Other Claims will be limited to those which are not within the definition of AMH's class, including opt-outs.

If the Court denies class certification, the results of the hazard adjudication will be binding solely on AMH (absent reversal of the certification ruling on appeal). In that event, aside from AMH's Hospital Claim, all PD Claims will be Other PD Claims and fully adjudicated one-by-one (on a myriad of issues) pursuant to an altogether different and complex procedure involving both the

---

[4]Grace admitted below that its building asbestos products were sold to thousands of customers [Bk. 32650 at 22: Opposition at 14].

Bankruptcy Court and this Court and District Courts throughout the country.   Absent class certification, that procedure will go on for a number of years as claims continue to accrue.

## IV.  STATEMENT OF CASE

AMH filed its Motion to Alter or Amend shortly after the Effective Date.  AMH set forth in great detail all the changes since entry of the Certification Order, including confirmation of the Plan [Bk.31812 at 16-32].  AMH cited Rule 23(c)(1)(C), not Rule 59,  as its jurisdictional authority [*Id*.].  Following briefing and oral argument, Judge Carey denied AMH additional discovery and directed the parties to brief class certification [Bk. 32571].  The parties filed extensive briefs, and Judge Carey entertained oral argument on June 15, 2016 and took the matter under advisement.

On August 16, 2016, the Chief Judge of the Delaware Bankruptcy Court re-assigned the case to Bankruptcy Judge Kevin Gross [Bk. 32763].  The following day, Judge Gross ordered that certain matters Judge Carey had taken under advisement, including AMH's Motion to Alter or Amend, "are not subject to the [Chief Judge's] Order of Reassignment and shall remain with Judge Kevin Carey until disposition, at which time all subsequent matters remaining in the Retained Matters shall be administered by the undersigned" [Bk. 32764].  Eight days later, on August 25, 2016, Judge Carey denied AMH's Motion to Alter or Amend.

## V.  ARGUMENT

A.     **This Appeal Is Not Interlocutory**

Grace argues that this appeal should be dismissed because "an order denying a motion for class certification is not final, and thus not appealable as of right" [Motion at 1, citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 464-65, 470 (1978)].  *Coopers* is inapplicable and distinguishable.

1.     *This Is An Appeal From An Order Interpreting The Plan, Not "An Appeal From An Order Denying A Motion For Class Certification."*

This is an appeal from an Order finally holding that the Plan prohibits, as a matter of law, the use of Rule 23 in adjudication of thousands of PD Claims.  Unlike *Coopers, it* is not an appeal of "an order denying a motion for class certification."

Judge Carey not only held that the Plan prohibits any PD Claimant, other than AMH, from pursuing a Rule 23 class action, but by holding that the Plan prohibits AMH from representing other post-Bar Date claimants, effectively ruled that AMH could never represent a class because there are no members of its putative class (other than itself).  In addition, Judge Carey held that despite Rule 23(c)(1)(C), he had no power to examine Judge Fitzgerald's Certification Order because the Plan abrogates Rule 23(c)(1)(C). Judge Carey's rulings in the Order are not interlocutory findings based on the elements of Rule 23; they are final conclusions of law based on his erroneous interpretation of the Plan.

The best evidence that this is not a Rule 23 Order is Judge Carey's holding that AMH's motion "is inherently a motion to reconsider" Judge Fitzgerald's Certification Order and that "Fed. R. Civ. P. 59, as made applicable by Fed. R. Bankr. P. 9023, governs motions for reconsideration" [Order at 7-8].  Judge Carey then applied the standards of Rule 59 rather than Rule 23 to deny AMH's Rule 23(c)(1)(C) Motion to Alter or Amend [Order at 11-12].

Respectfully, Rule 23(c)(1)(C) is not Rule 59.  Rule 23(c)(1)(C) and Rule 59 are not even distant cousins.  Rule 23 is a case management rule applicable to interlocutory class certification orders entered "**before final judgment**."  In contrast, Rule 59 permits a motion to alter or amend **a judgment**.  Despite AMH's efforts in 2008, Judge Buckwalter and the Third Circuit, at Grace's urging, declined to classify the Certification Order as a judgment.  By holding that Rule 59 applies, however, Judge Carey effectively ruled that the Certification Order is a judgment.

Page 9 of 20

*Coopers* is clearly inapplicable. Grace has cited no authority for the proposition that an Order interpreting the Plan to the detriment of thousands of PD Claimants cannot be appealed.

### 2.    *This Is Not An Interlocutory Appeal Because Judge Carey Held That The Plan Abrogates Rule 23(c)(1)(C)*

The essence of an interlocutory order is that it can be modified at any time before final judgment. A Rule 23 class certification order normally is interlocutory because Rule 23(c)(1)(C) specifically provides that, "An order that grants or denies class certification may be altered or amended before final judgment." *Coopers* makes this crucial point: "The Rule provides that an order involving class status may be 'altered or amended before the decision on the merits.' Thus, a district court's order denying or granting class status is inherently tentative." *Coopers* at 469, n. 11.

The Supreme Court recently and succinctly reiterated this point: "**Certifications are not frozen once made**. Rule 23 empowers district courts to alter or amend class-certification orders based on circumstances developing as the case unfolds." *Amgen v. Connecticut Retirement Plans and Trust*, __ U.S. __, 133 S.Ct. 1184, 1212, n. 9 (2013) (emphasis added) (internal quotation marks and brackets omitted). Rule 23(c)(1)(C) is a unique rule which clothes the trial Court with the essential means to manage class litigation.

In this case, Judge Carey froze Judge Fitzgerald's Certification Order, barred the application of Rule 23 and applied Rule 59 instead. As a result, not only is *Coopers* inapplicable, but the Order, if not reversed, means that the Certification Order is no longer interlocutory.

### 3.    *The Order Is Final As To Thousands Of Individual Claimants*

In *Coopers*, if the class was not certified, the members of the class could file individual lawsuits. For that reason, *Coopers* emphasized that the certification order was not final until the class

representative's individual lawsuit was tried. During that period of time, the rights of individual claimants to bring individual lawsuit was tolled by *American Pipe & Construction Co. v. Utah,* 414 U.S. 538 (1974). Therefore, in the circumstances presented, the Order in *Coopers* was not final. In this case, Judge Carey's Order must be considered in the context of the PD Bar Date. According to Grace, if certification is denied, thousands of PD Claimants who did not file individual PD Claims before the Bar Date will be forever barred.

4. *Judge Carey Expressed The View That AMH Did Not Have To Appeal The Results Of The Objections Trial Before Seeking Rule 59 Reconsideration*

Judge Carey did not rule that AMH had to wait until final judgment (i.e. a judgment that survives all appeals). In fact, Judge Carey told the parties at oral argument the he interpreted the Plan (differently from Grace) to provide that AMH could file a Rule 59 "Motion to Reconsider" Judge Fitzgerald's Certification Order after Grace's objections to AMH's Hospital Claim were heard – **before AMH pursued any appeal** [Bk. 32707 at 52-60, 81-86 (TAB I)]. In addition to being another illustration that Judge Carey was focused on the Plan and not Rule 23, it demonstrates that Judge Carey was not dealing with the final judgment issue discussed in *Coopers*.

5. *The Order Is Inconsistent With Rule 23 And Common Sense*

Grace successfully opposed against AMH's earlier attempt to appeal Judge Fitzgerald's Certification Order by arguing that AMH would not be prejudiced by the Plan. After obtaining confirmation of the Plan, Grace convinced Judge Carey that he was prohibited from considering AMH's Rule 23 arguments until after adjudication of Grace's objections to AMH's Hospital Claim, but that in any event the Plan erased all class members. Leaving aside the holes in Grace's technical arguments, Judge Carey's Order is inconsistent with Rule 23 and common sense.

Grace's Motion must be considered in the context of what will happen if the Court does not entertain this appeal. Judge Carey has bequeathed to Judge Gross a case that cannot be resolved until the class certification issue is decided. As an individual claimant, AMH, in all likelihood, could resolve its Claim (as AMH's counsel resolved all of its other USA individual claims at a mediation before former Magistrate Diane M. Welsh). As the class representative, however, AMH has a fiduciary duty to the class, which it cannot breach by resolving its individual claim until it has exhausted all appellate remedies regarding class certification.

Grace would have this Court wait several more years until returning to the exact point where the parties stand today. Specifically, Grace proposes that the parties litigate Grace's objections to AMH's Hospital Claim (hazard and damages) before any appeal of the Certification Order. In AMH's view, the adjudication of the hazard objection should be essentially the same as one of the central issues that AMH's counsel and Grace have litigated for years in the tort system. Given the fact that a potential class action is standing in the wings, however, AMH has no doubt that Judge Gross faces an ordeal in waiting.[5]

At some point Judge Gross will rule on Grace's objections to the Hospital Claim. According to Grace, AMH can then appeal Judge Fitzgerald's Certification Order to this Court [Bk. 32650 at

_____

[5]There is actually a perfect analog in this bankruptcy demonstrating what previously happened in almost the identical circumstances. During the bankruptcy, Judge Fitzgerald decided that before issuing a ZAI Bar Date, she would examine the hazard issue through Grace's objections to four small ZAI Claims. Over four years later, after scientific testing, nationwide discovery, numerous motions, multiple hearings, and voluminous briefs, Judge Fitzgerald issued her decision, which was not binding on the later certified ZAI Class. The record before Judge Fitzgerald on this issue consisted of more than one hundred and thirty (130) docket entries. ZAI Claimants' counsel alone invested more than 15,000 hours in this proceeding. The adjudication cost approximately $6 million dollars in fees and expenses [Bk. 32624 (TAB J at 22-25)].

__ ].[6]  Given the stakes, whoever loses this appeal will undoubtedly appeal to the Third Circuit.  Of course, this Court or the Third Circuit could remand the matter to Judge Gross who, despite having no prior involvement in this case, could be directed to address issues that have arisen since 2008.

That highlights another fundamental problem with Grace's procedure: the appellate courts will be reviewing a Certification Order essentially made inoperative by a  Plan first proposed several months after Judge Fitzgerald ruled on certification.  Simply stated, even if Fitzgerald was absolutely correct in 2008 in refusing to certify AMH's class action – which AMH disputes – it does not mean that the class is not imminently certifiable today (or even more so).  That is the essence of Rule 23.

Procedurally, under such circumstances, what will this Court and the Third Circuit hear:  the Certification Order or the Motion to Alter or Amend?  If the latter, will the Court examine Judge Carey's Order interpreting the Plan, or the merits of class certification in light of changed circumstances?  Resolution of AMH's Rule 23(c)(1)(C) Motion can eliminate this quagmire.

If AMH ultimately prevails on its certification appeal, the parties will return to the Bankrupcy Court and adjudicate the Class Claims.  If AMH has won the hazard issue in the adjudication of Grace's objection to AMH's Hospital Claim, will Grace concede – **will Grace tell this Court now** – that the ruling applies to the entire class (even though AMH would have no authority to bind an uncertified class prior to certification)?  If not, this is the polar opposite of how Rule 23 is designed

---

[6]Judge Carey's view, as expressed at oral argument [Bk. 32707 (TAB I at 52-60, 81-86)], that AMH could seek reconsideration of the Certification Order after Grace's objections are decided (before any appeal) presents its own set of imponderables.  Must AMH go this route instead of appealing?  Would AMH file such a request under Rule 23(c)(1)(C) (would it spring back to life) or Rule 59 (with its different burden of proof)?  What weight would Judge Gross give Judge Carey's *dictum* on the merits?  What is the deadline for filing an appeal from the ruling on Grace's objections? Does the Bankruptcy Court have jurisdiction to reconsider if AMH files an appeal after the objections trial?

to work where a class trial in the name of the class representative efficiently resolves all claims.

If Grace prevails and there is no class certification, AMH's counsel and other counsel who are awaiting resolution of the certification issue will start filing individual Claims in the Bankruptcy Court. At that point, under the PDCMO, Grace will have the right to object to each Claim, requiring each Claimant to "run the gauntlet" in the Bankruptcy Court (with the right to appeal to this Court and the Third Circuit) before being released for a jury trial in this Court or the District Court where the building is located. That will present a plethora of issues, including the ubiquitous question of accrual and the jurisdiction of a District Court to try thousands of small claims which do not meet the jurisdictional amount for diversity purposes [Bk. 32650].

Clearly, such a procedure would be totally antagonistic to the provisions of Rule 23. All of these Courts would be heading down uncharted territory to manage and review a class action without any of the flexibility that Rule 23 requires. Under such circumstances, it cannot be said that this appeal presents an interlocutory order in the traditional sense.

"Rule 23, **as well as common sense**, requires class certification issues to be addressed first." *Amgen v. Connecticut Retirement Plans and Trust*, __ U.S. __, 133 S.Ct. 1184, _____ (2013) (emphasis added) (J. Thomas dissenting). The Third Circuit has recognized the importance of common sense in analyzing class related decisions. *See Beck v. Maximus, Inc.*, 457 F.3d 291 (3rd Cir. 2006). Does *Coopers* really require the Court and the parties to defer the question of class certification for years while going through an "Alice in Wonderland" experience by pretending that this case involves conditions as they existed in 2008? The proposition defies common sense.

### 6. *The Cohen Exception Applies*

*Coopers* involved an appeal from the District Court to the Sixth Circuit – long before the

enactment of Rule 23(f) and its more liberal standard for appealing of class certification.  The Supreme Court noted that, "In this case, respondents rely  on the 'collateral order' exception articulated by this Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, and on the 'death knell' doctrine adopted by several Circuits to determine the appealability of orders denying class certification."  *Coopers* at 468.  The Supreme Court reaffirmed the collateral order exception (hereinafter "***Cohen* Exception**"), but held that the doctrine was "*not applicable to the kind of order involved in this case.*"  *Coopers* (emphasis added).  The Supreme Court then rejected the death knell exception  altogether because that presented a policy question for Congress, not the courts.

*Coopers* does not establish an ironclad rule that all motions for class certification are interlocutory.  Judge Carey's Order – which is not based on Rule 23 and which concludes that AMH can never represent a Class of Claimants as a matter of law – is wholly dissimilar to *Coopers.  Cohen* provides strong support for this Court's jurisdiction.

In *Coopers*, the Supreme Court noted that, "To come within the 'small class' of decisions excepted from the final-judgment rule by *Cohen*, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."  *Coopers* at 468, citing *Cohen*, 337 U.S. at    .  The Court then set forth three reasons why the collateral-order doctrine was not applicable to the denial of class certification in *Coopers.*  Even if Judge Carey's Order was a Rule 23 Order instead of an Order interpreting the Plan, none of these reasons exists in the instant appeal.

The first (and most important) reason the Supreme Court gave was that "such an order is subject to revision in the District Court. Fed.Rule Civ.Proc. 23(c)(1) [Now Rule 23(c)(1)(C)]." *Id.*

at 469.  Judge Carey stripped away the interlocutory nature of the Certification Order when he ruled that the Plan effectively abrogates Rue 23(c)(1)(C) and precludes any post-Bar Date claimants from being included in the AMH class.  For this reason alone, the Certification Order is a final order.

The second reason was that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' " *Id*. at 469. While that may often (but not always) be true, it clearly is not so in this case.  As stated above, Judge Carey based his decision on his legal conclusions on the Plan, not on the fact of the underlying cause of action.

The third reason was that "an order denying class certification is subject to *effective review* after final judgment at the behest of the named plaintiff or intervening class members." *Id*. at 469 (emphasis added).  Judge Carey accepted Grace's argument that AMH's only appellate remedy under the Plan is to appeal Judge Fitzgerald's Order denying class certification after trial of the Hospital Claim.  Indeed, Judge Carey held that the Plan prohibits AMH from even asking the Court at this juncture to alter or amend Judge Fitzgerald's Order.  In 2008, Grace successfully resisted AMH's effort to obtain review of Judge Fitzgerald's Order by assuring the Third Circuit and AMH that its proposed Plan had no effect on the finality of the class certification ruling.  In 2016, Judge Carey, at Grace's urging, ruled that under the confirmed Plan, he had no authority to alter or amend Judge Fitzgerald's Order and that the Plan imposes an iron wall preventing AMH from ever representing its proposed class of claimants.

If AMH follows Judge Carey's roadmap, how would this Court effectively review Judge Fitzgerald's 2008 Order?  For the reasons set forth in Section 5 above, any such appellate review, on a record superseded by developments over the last decade, would not be "effective."

For the foregoing reasons, AMH submits that *Coopers* does not preclude consideration of this appeal, that Judge Carey's Order is in fact a final order, and that even if Judge Carey's Order is not a traditional "final order," the *Cohen* Exception applies.

**B.** **This Appeal Is Not Barred By The Plan**

Grace argues in the alternative that this Court lacks jurisdiction because the PDCMO provides that AMH's Class Claims "shall remain ***inactive*** unless and until there is a final, appealable order with respect to the Anderson Memorial individual claim (No. 011008)." [Motion at 11 (emphasis by Grace)]. Grace asserts that, **Needless to say, this Court has no authority to revisit class claims that, as a result of the Plan, are 'inactive' as a matter of law."** [Motion at 11 (emphasis added)].

Needless to say? Nowhere in the Plan – nor in the Bankruptcy Code – is there a definition of an "Inactive Claim." The PDCMO does not say that "this Court has no authority to revisit class claims that, as a result of the Plan, are 'inactive' as a matter of law." Judge Carey disagreed with Grace's interpretation when he told the parties that he thought class claims could be addressed before any appeal. Judge Fitzgerald denied Grace's request that the Plan (Exhibit 21) be amended to reflect that AMH's Class Claims are inactive.[7] Grace did not disclose that Rule 23(c)(1)(C) would be abrogated in the Plan when it convinced the Third Circuit that AMH could not appeal the Certification Order. Grace does not tell the Court that AMH appealed Judge Fitzgerald's Order reducing the Class Claims to zero before the Plan was confirmed, and that appeal is still pending in this Court.

Finally, the provision in the PDCMO had nothing whatsoever to do with Rule 23(c)(1)(C).

---

[7]After Judge Fitzgerald denied Grace's specific request to classify AMH's Claims as inactive, Grace surreptitiously added this phrase to Exhibit 21 the year following the confirmation hearing.

The provision was clearly added by Grace in an effort to shield it from an attack by AMH that the Plan would eliminate AMH's quest for certification of a class action, which would provide AMH an avenue to attack the Plan on that ground.  Grace now tries to take the shield it provided from that attack and use it as a sword against AMH when that was never in the mind of anyone, and clearly not articulated at the time.

This Court cannot consider the merits of Grace's argument without addressing the merits of Judge Carey's ruling in the Order, which is the very subject of the proposed appeal.  If this Court intends to address that issue, then it should do so in the context of appellate briefing and argument, not on a motion to dismiss the appeal.

As explained in AMH's briefing in the Bankruptcy Court, and as will be addressed in this appeal, Grace's argument is mistaken for at least two reasons.  First, the language of the PDCMO does not, by its express terms, apply to the AMH Class Claims, as to which there was no appeal from class certification pending as of the Effective Date.  Second, Judge Carey's Order erroneously concluded that he lacked discretion to modify an (unexecuted) scheduling and sequencing order in light of changed circumstances in the nearly eight years since it was initially proposed.

The provisions of the proposed PDCMO relied upon by Grace appear in Section I.B.1-3 of the document.  However, the applicability of those provisions is defined and limited by the first sentence of Section I.B., which reads:

> With respect to any and all Class 7A Asbestos PD Claims which were filed as of the March 2003 Bar Date and which either (i) have been disallowed and/or expunged by the Bankruptcy Court and for which the Holders of such Asbestos PD Claims have filed appeals, which appeals are pending as of the Effective Date; or (ii) as to which class certification has been denied and an appeal from such denial of class certification is pending as of the Effective Date:

[PDCMO, pp. 1-2]. The AMH Class Claims were filed as of the March 2003 Bar Date, but they had not been disallowed and/or expunged by the Bankruptcy Court, and so they do not come within the scope of subsection (i) of Section I.B. Class Certification had been denied as to the AMH Class Claims, but AMH's appeal was dismissed by the Third Circuit Court of Appeals on December 14, 2009. Since that date, there has been no pending appeal from the denial of class certification of the AMH Class Claims. The Effective Date did not occur until February 2014, more than four years later. Thus, there was no appeal from the denial of class certification pending as of the Effective Date, and so the AMH Class Claims do not fall within subsection (ii) of Section I.B. either. ***Accordingly, under the express terms of the PDCMO, the provisions of subsections 1-3 of Section I.B. relied upon by Grace are not applicable to the AMH Class Claims because the AMH Class Claims, by definition, do not fall within Section I.B.***

There is a certain logic to the words chosen. While an appeal is pending, the Bankruptcy Court may well be divested of jurisdiction to entertain further proceedings on a class claim. But when such an appeal is dismissed, the Court's jurisdiction over the underlying claims is restored.  In any event, the PDCMO by its express terms does not compel the AMH Class Claims to await determination of the AMH Individual Claim before seeking reconsideration of class certification.

Moreover, there is nothing in the Plan itself which prohibits modifications of the PDCMO to address the significantly changed circumstances since it was first proposed more than eight years ago. The definition of the "Plan Documents" in the Plan includes reference to each such document "as each may be amended, supplemented, or otherwise modified from time to time in accordance with its terms." [DI26368-1 at 33]. The only limitation on post-Effective Date modification is in Section 4.12 of the Plan, which provides that such modifications may not conflict with the Sealed Air Settlement

Agreement or the Fresenius Settlement Agreement. [*Id*. at 57]. The Plan expressly reserves and preserves the Court's jurisdiction "to consider and approve any modifications of this Plan or Plan Documents, remedy any defect or omission, or reconcile any inconsistency in any order of the Court" [*Id*. at 119]. There is nothing in the PDCMO itself which would purport to limit the Bankruptcy Court's inherent authority to modify its own order – and indeed, the Plan specifically preserves the Court's authority to exercise its own jurisdiction.

Judge Carey's misinterpretation of the PDCMO, and his refusal to even consider exercising his jurisdiction to modify the PDCMO, are issues that will be the subject of this appeal. They should not serve as the basis for dismissal before the merits of those decisions have even been addressed.

## **CONCLUSION**

The Motion should be denied.

Dated: January 4, 2017

/s/ Theodore J. Tacconelli

Daniel A. Speights (SC Fed. ID No. 4252)
A. Gibson Solomons (SC Fed. ID No. 7769)
SPEIGHTS & RUNYAN
100 Oak Street East; Post Office Box 685
Hampton, SC 29924
Telephone 803-943-4444
Fax 803-943-4599
Email: dspeights@speightsrunyan.com

Theodore J. Tacconelli (No. 2678)
FERRY JOSEPH, P.A.
824 Market Street, Suite 1000
Wilmington, DE 19899
Telephone 302-575-1555
Fax 302-575-1714
Email: ttacconelli@ferryjoseph.com

David L. Rosendorf (FL Bar No. 996823)
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon, 9th Floor
Coral Gables, FL  33134
Telephone 305-372-1800
Fax 305-372-3508
Email: dlr@kttlaw.com

*Counsel for Appellant,*
*Anderson Memorial Hospital*